UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 22-158 (ECT)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | PLEA AGREEMENT AND |
| ) | SENTENCING STIPULATIONS |
| JAY JAMES OLSON, ) | |
| ) | |
| Defendant. ) | |

The United States of America and the defendant, JAY JAMES OLSON, agree to resolve this case on the following terms and conditions. This plea agreement binds only the defendant and the United States Attorney's Office for the District of Minnesota. It does not bind any other United States Attorney's Office or any other federal or state agency.

1. **Charges**. The defendant agrees to plead guilty to Count 1 of the Indictment, charging the defendant with willfully engaging in the business of manufacturing firearms without a license, in violation of Title 18, United States Code, Sections 922(a)(1)(A) and 924(a)(1)(D). In exchange, the United States agrees to move to dismiss Count 2 and Count 3 at the time of sentencing.

2. **Factual Basis**. The defendant stipulates and agrees to the following facts and further agrees that, were this matter to go to trial, the United States would prove the following facts beyond a reasonable doubt:

   a. Beginning in or about the fall of 2021, and continuing through April 2022, the defendant willfully engaged in the business of manufacturing firearms without a license. The defendant is not and has never been a federally licensed manufacturer of firearms. During this time period, however, the defendant devoted time, attention, and labor to manufacturing firearms with the principal objective of

selling the manufactured firearms for profit. The defendant admits that he knew he was not licensed to manufacture firearms, that he knowingly and intentionally engaged in the manufacturing of firearms without a license, that he acted voluntarily, and that he knew his actions violated the law.

      b.     During March and April 2022, the defendant offered to sell various firearms he had manufactured, as well as multiple other firearms and accessories, including a silencer, an auto-sear or switch, and high-capacity magazines, to a person for $20,000. Unbeknownst to the defendant, the person was working as a confidential source ("CS") with police investigators. The defendant conducted a FaceTime video call with the CS, during which he showed the CS multiple firearms and accessories he offered for sale, including manufactured firearms with no serial numbers. The defendant also discussed his manufacturing of firearms with the CS and the benefits of having firearms without serial numbers. The defendant told the CS the price for each firearm, but noted the price would be going up because of the federal government's recent initiative targeting unserialized firearms.

      c.     On April 26, 2022, the defendant met with the CS at a residence in Waite Park, Minnesota. In exchange for $20,000 cash, the defendant sold the CS the following: 16 unserialized manufactured firearms, 9 high-capacity magazines, 1 firearms silencer (made from an oil filter), an auto-sear or switch, and other firearms accessories. Immediately after the transaction, police arrested the defendant and others present and executed a search warrant at the residence. During the search, investigators recovered firearm assembly kits, unserialized lower receivers, and multiple miscellaneous firearms parts and accessories.

      d.     On May 4, 2022, investigators executed a search warrant at the defendant's residence in Sauk Rapids, MN, and recovered from the basement a WEN-brand drill press, a box containing 4 AR10/AR15 lower jigs,[1] various jig bolts and jig pieces, tooling end-mill instructions, a baggie with hex wrenches (commonly found in jig kits) on top of a placemat diagramming how to assemble a Glock firearm, stickers for Polymer 80 and gun manufacturing companies, and two unopened tubes of welding epoxy. Several of the jigs had metal shavings on them near holes that are used for drilling.

3.    **Waiver of Pretrial Motions**. The defendant understands and agrees that he has certain rights to file pretrial motions in this case. As part of this plea agreement, and

---

[1] A *jig* is a kit consisting of metal or plastic plates, bolts, and drill bits and end-mill bits, that are made specific to the firearm being built and are used convert so-called 80% lower receivers or frames into a working firearm. They usually include the tools, measurements, and physical guides for fabricating the lower into a working firearm.

based upon the concessions of the United States contained herein, the defendant knowingly, willingly and voluntarily agrees to withdraw any pretrial motions he may have already filed and to give up the right to file any additional pretrial motions.

4.  **Statutory Penalties**. The parties agree that Count 1 of the Indictment carries the following statutory penalties:

> a. a maximum term of 5 years' imprisonment, a Class D felony. (18 U.S.C. §§ 922(a)(1)(A) and 924(a)(1)(D), and 3559(a)(4));
>
> b. a supervised-release term of not more than 3 years. (18 U.S.C. §§ 3559(a)(4) and 3583(b)(2));
>
> c. a fine of up to $250,000. (18 U.S.C. §§ 924(a)(1)(D) and 3571(b)(3)); and
>
> d. a mandatory special assessment of $100. (18 U.S.C. § 3013(a)(2)(A)).

5.  **Guidelines Calculations**. The parties acknowledge the defendant will be sentenced in accordance with Title 18, Chapter 227 (18 U.S.C. §§ 3551 – 3586) and with reference to the advisory United States Sentencing Guidelines. The parties also acknowledge the Court will consider the United States Sentencing Guidelines in determining the appropriate sentence and stipulate to the following Guidelines calculations. Notwithstanding the following stipulations, nothing in this plea agreement prevents the parties from bringing to the attention of the Court and the Probation Office all information in their possession regarding the offense(s), including relevant conduct, and the defendant's background.

> a. The United States believes that because the offense involved a semiautomatic firearm capable of accepting a large-capacity magazine, or a firearm described in 26 U.S.C. § 5845(a), and the defendant was a prohibited person when he committed the instant offense, the base offense level is 20. USSG § 2K2.1(a)(4)(B). The defendant reserves the right to oppose at sentencing his being a prohibited person at the time of the offense, and believes the base offense

level is 18, because the offense involved a firearm described in 28 U.S.C. § 5845(a). USSG § 2K2.1(a)(5).

      b.    **Specific Offense Characteristics**.  The parties agree that because the offense involved between 8 and 24 firearms, the base offense level is increased by 4 levels.  USSG § 2K2.1(b)(1)(B).

The United States believes that because the defendant engaged in the trafficking of firearms, the base offense level is further increased by 4 levels. USSG § 2K2.1(b)(5).  The defendant reserves the right to oppose at sentencing this specific offense characteristic. The parties agree that no other specific offense characteristics or adjustments apply in this case.

      c.    **Chapter Three Adjustments**.  The parties agree that, other than as provided for in paragraph d. below for acceptance of responsibility, no other Chapter Three adjustments apply.

      d.    **Acceptance of Responsibility**.  The parties agree that if and only if the defendant: (1) provides full, complete and truthful disclosures to the United States Probation and Pretrial Service Office, including providing complete, accurate and truthful financial information; (2) testifies truthfully at the change-of-plea and sentencing hearings; (3) complies with this agreement; and (4) does not engage in any act inconsistent with acceptance of responsibility before the time of sentencing, including frivolously denying facts in the Presentence Report, the United States will recommend that the defendant receive a two-level reduction for acceptance of responsibility under USSG § 3E1.1(a), and will move for an additional one-level reduction under § 3E1.1(b).  The defendant understands that any reduction for acceptance of responsibility shall be determined by the Court in its discretion. Nothing in this agreement, however, limits the right of the Government, pursuant to U.S.S.G. § 3E1.1 and/or § 3C1.1 to seek denial of a reduction for acceptance of responsibility or an enhancement for obstruction of justice should the defendant engage in any conduct inconsistent with acceptance of responsibility, including moving to withdraw his guilty plea after it is entered.

After applying all adjustments, the **adjusted total offense level may range from 25** (20+4+4-3) **to 19** (18+4-3).

      e.    **Criminal History Category**.  Based on the information currently available, the parties believe the defendant has a criminal history category of **I**. This is not a stipulation but merely a belief based on an assessment of the information currently known.  Accordingly, the parties agree that the defendant's actual criminal history category and related status will be determined by the Court

based on the information presented in the Presentence Report and by the arguments made by the parties at the time of sentencing.

  f. **Guidelines Ranges**.  If the total offense level is 25, and the criminal history category is I, the advisory Guidelines range is <u>57 to 71 months' imprisonment</u>, subject to the <u>statutory maximum sentence of 60 months</u>. Accordingly, under USSG § 5G1.1(a), <u>the Guideline range is 57 to 60 months</u>.

  If the total offense level is 21, and the criminal history category is I, the advisory Guidelines range is <u>37 to 46 months' imprisonment</u>.

  If the total offense level is 19, and the criminal history category is I, the advisory Guidelines range is <u>30 to 37 months' imprisonment</u>.

  g. **Fine Range**.  If the total offense level is 25, the applicable fine range is $20,000 to $200,000.  If the total offense level is 21, the applicable fine range is $15,000 to $150,000.  If the total offense level is 19, the applicable fine range is $10,000 to $100,000.  USSG § 5E1.2(c)(3).

  h. **Special Assessments**.  The Guidelines require payment of a special assessment in the amount of $100.00.  USSG § 5E1.3.  The defendant understands and agrees that this special assessment is due and payable at or before sentencing.

  i. **Supervised Release**.  The Guidelines require a term of supervised release of at least 1 year but not more than 3 years.  USSG § 5D1.2(a)(2).

  6. **Discretion of the Court**.  The foregoing stipulations bind the parties but not the Court.  The parties understand the Sentencing Guidelines are advisory and their application is a matter falling solely within the Court's discretion.  The Court may make its own determination regarding the applicable Guidelines factors and the applicable criminal history category.  The Court may also depart from the applicable Guidelines.  If the Court determines the applicable Guidelines calculations and/or the defendant's criminal history category are different from that stated above, the parties may not withdraw from this agreement, and the defendant will be sentenced pursuant to the Court's determinations.

7. **Sentencing Recommendation and Departures**. The parties reserve the right to make departure motions and to oppose any such motions made by the opposing party. The parties also reserve the right to argue for a sentence outside the applicable Guidelines range.

8. **Revocation of Supervised Release**. The defendant understands that if the defendant were to violate any supervised release condition while on supervised release, the Court could revoke the defendant's supervised release, and the defendant could be sentenced to an additional term of imprisonment up to the statutory maximum set forth in 18 U.S.C. § 3583(e)(3). *See* USSG §§ 7B1.4, 7B1.5. The defendant also understands that as part of any revocation, the Court may include a requirement that the defendant be placed on an additional term of supervised release after imprisonment, as set forth in 18 U.S.C. § 3583(h).

9. **Forfeitures**. The defendant agrees to forfeit all firearms, ammunition, magazines, and others accessories seized therewith on or about April 26, 2022, to the United States, pursuant to 18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461(c), including, but not limited to: (a) 3 AR-style assembled pistols with no serial numbers; (b) 11 Polymer 80 ("P80") assembled firearms with no serial numbers; (c) 1 P80 assembled firearm with no serial number, with an installed switch making it the fully automatic firearm listed in Count 2 of the Indictment; (d) 1 P80 assembled firearm with no serial number, with a threaded barrel (to enable screwing the firearm silencer, listed in Count 3, onto it); and (e) 1 firearm silencer, (as listed in Count 3); all ammunition, and all accessories, including, but not limited to, (a) 9 high-capacity magazines, including 3 drum magazines, for P80-style

firearms; (b) 2 pistol carbine-conversion kits; (c) a brass-catcher; (d) 3 P80 handgun lower assembly kits; (e) 4 AR lower receivers with no serial numbers; (f) 1 AR upper with a bolt; (g) 1 grey P80 assembled lower receiver with no serial number; and (h) additional miscellaneous firearms parts and accessories.

The defendant agrees that the United States may, at its option, forfeit such property through civil, criminal, or administrative proceedings, waives any deadline or statute of limitations for the initiation of any such proceedings, and abandons any interest he may have in the property. The defendant also waives all statutory and constitutional defenses to the forfeiture and consents to the destruction of the firearms, ammunition, and associated accessories. The defendant agrees that the firearm, ammunition, and related accessories are subject to forfeiture because they were involved in knowing violations of federal law.

10.   **Waiver of Freedom of Information Act and Privacy Act**.  In exchange for the concessions of the United States made herein, the defendant agrees to waive all rights to obtain, directly or through others, information about the investigation and prosecution of this case under the Freedom of Information Act and the Privacy Act of 1974, 5 U.S.C. §§ 552, 552A.

11.   **Waiver of Appeal and Postconviction Petition**.  The parties are expressly aware that Title 18, United States Code, Section 3742, affords them the right to appeal the sentence imposed in this case. Acknowledging this right, and in exchange for the concessions made as part of this agreement, the parties hereby waive all rights conferred by Title 18, United States Code, Section 3742, to appeal the sentence imposed or the basis of conviction on any ground, except the defendant may appeal his sentence if the sentence

imposed is greater than 37 months, and the United States may appeal the sentence if the sentence imposed is less than 57 months. The defendant also understands his rights to file a postconviction petition contesting his conviction or sentence and, except for a claim of ineffective assistance of counsel, the defendant knowingly and voluntarily waives all rights to contest the defendant's conviction or sentence in any postconviction proceeding, including one pursuant to Title 28, United States Code, Section 2255. The defendant has discussed these rights with the defendant's counsel and understands the rights being waived.

12.  **Complete Agreement**.  This, along with any agreement signed by the parties before entry of plea, is the entire agreement and understanding between the United States and the defendant.  By signing this plea agreement, the defendant acknowledges: a) that he has read the entire agreement and has reviewed every part of it with his counsel; b) that he fully understands this plea agreement; c) that no promises, agreements, understandings, or conditions have been made or entered into in connection with his decision to plead guilty, except those set forth in this plea agreement; d) that he is satisfied with the legal services and representation provided by defense counsel in connection with this plea agreement and matters related to it; e) that he has entered into this plea agreement freely, voluntarily, and knowingly; and, f) that his decision to plead guilty in accord with the terms and conditions of this plea agreement is not the result of any threats or coercion directed at him or anyone connected with him.

Dated:  SEPTEMBER 28, 2022     ANDREW M. LUGER
United States Attorney

BY: BENJAMIN BEJAR
Assistant United States Attorney

Dated:  9.28.22

JAY JAMES OLSON
Defendant

Dated:  9.28.22

BRUCE D. NESTOR, ESQ.
Attorney for Defendant