UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Case No: 22-CR-158(ECT)

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>v. )<br>)<br>JAY JAMES OLSON, )<br>)<br>Defendant. ) | **SENTENCING POSITION<br>OF JAY JAMES OLSON** |

## INTRODUCTION

Jay James Olson comes before this court as a twenty-two year old young man facing his first significant criminal sentence. He grew up in a working-class home of limited means, never knowing his biological father. From the age of three, Jay was diagnosed with Attention Deficit Hyperactivity Disorder (ADHD) and placed on medication. He has received treatment for depression and anxiety since age 16 when he tried to "drink himself to death" with alcohol and continues to take anti-depression and anti-anxiety medications. During his school years, he had an Individualized Education Plan (IEP) and received special education services. He was the subject of persistent verbal and physical bullying in school which, combined with his substance abuse, led to him skipping school and eventually dropping out before receiving a high school diploma. He has experienced substantial emotional loss in his life, including the death of his brother-in-law from alcohol related liver failure in 2020, the loss of an unborn sibling when he was seven years old, and the suicide of two close friends in 2020.

1

Notwithstanding a difficult childhood and adolescence, Jay Olson is a young man with significant potential and hope for a better future. He has a strong and supportive family which has maintained almost daily contact with him since his arrest in this matter in April of 2022. His friends and family universally describe him as a caring person and a talented artist, who mentored young children when he rode BMX bikes, bakes cakes for his friends, and shows love and compassion for animals. During the past twelve months of incarceration, Jay has avoided disciplinary problems in jail and completed any limited programming available to him in the Sherburne County Jail, including psychoeducation group therapy and classes in cognitive behavioral therapy and dialectical behavioral therapy. He expresses insight into his criminal behavior, remorse, and a desire for significant personal and social change.

Jay requests that this Court impose a sentence no greater than 36 months, to be followed by a period of supervised release for an additional 36 months. With vocational training, substance abuse treatment, and the support of his family, a shorter prison sentence would make Mr. Olson less likely to be involved in future criminal activity while a longer prison sentence would only further separate him from society and his family and make it more likely that he would engage in criminal activity upon release from prison. Mr. Olson's pursuit of mental health therapy while at the Sherburne County Jail is an indication that he will avail himself of any available programming in prison and that he is committed to making changes in his life so as to avoid criminal activity in the future. He will be subject to a term of Supervised Release of up to three years after his completion of any custodial

sentence such that failure to make the necessary changes in his life and avoid future criminal acts will expose him to an additional custodial sentence as long as the requested imposed sentence itself. As a result, a sentence of 36 months is sufficient, but not greater than necessary, to accomplish the purposes of sentencing.

## **GUIDELINE CALCULATIONS**

The final Pre-Sentence Report (PSR) calculates a sentencing range under the United States Sentencing Guidelines (U.S.S.G.) of 57 to 60 months, based on a total offense level of 25, a criminal history category of I and the statutory maximum of 60 months. Mr. Olson objects to the Guideline calculation calculated by the PSR on the grounds set forth below. Absent application of the enhancements under §2K2.1(a)(4)(B) and §2K2.1(b)(5), Mr. Olson's position is that the adjusted offense level should be 19 with a Guideline range of 30-37 months for a Criminal History Category I.

Unlawful User of Controlled Substance - §2K2.1(a)(4)(B) - Unlike a person who is a prohibited person due to the existence of a definite fact such as a felony conviction, their immigration status, or a qualifying conviction for domestic abuse, for example, the definition and application of whether a person is an "unlawful user of or addicted to a controlled substance (as defined in section 102 of the Controlled Substances Act (21 USC §802)), is unconstitutionally vague and fails to put a person on notice as to what conduct makes that person a prohibited person. 18 USC §933(g)(3). Absent a conviction, a person is required to conduct a self-assessment as to whether at a particular moment in time they are a "prohibited person" due to past or present use of a controlled substance, which is

3

inherently an indefinite and undefinable status. See, United States v. Bramer, 832 F.3d 908, 909 (8th Cir. 2016)(noting that it is "plausible" that the terms "unlawful user" of a controlled substance could be unconstitutionally vague but rejecting constitutional challenge when defendant admitted in plea agreement to using marijuana while in knowing possession of firearms). Mr. Olson has not admitted in the plea agreement to using marijuana at the same time that he was in knowing possession of a firearm and the evidence of Mr. Olson's use of marijuana is insufficient to establish a specific temporal nexus between regular drug use and the proscribed act. United States v. Carnes, 22 F. 4th 743, 748 (8th Cir. 2022).

In addition, although not a specific objection to the Guidelines calculation, Mr. Olson contends that if the Court applies the two-level increase pursuant to §2K2.1(a)(4)(B), that the Court should on policy grounds reject the imposition of a two-level enhancement which increases the Guidelines sentence by 11-14 months. Marijuana is legal in a majority of state jurisdictions and in 2023 there is widespread social acceptance of marijuana. The community in which Mr. Olson was raised, Minnesota, is itself on the cusp of legalizing marijuana. In December of 2020, the United States House of Representatives voted 228-164 to remove federal penalties on marijuana and erase marijuana related criminal records. On July 14, 2021, Senate Majority leader Charles Schumer endorsed the federal decriminalization of marijuana.[1] By removing marijuana from the Controlled Substances Act, the "Marijuana, Opportunity, Reinvestment and Expungement Act of 2020," HR

---

[1] https://www.nytimes.com/2021/07/14/us/politics/marijuana-legalization-schumer.html

3884, would effectively remove the basis for the Guideline enhancement in Mr. Olson's case.

Only twenty years ago, marijuana was illegal in all fifty states. The Sentencing Commission, and the enhancement at §2K2.1(a)(4)(B) as applied to a user of marijuana, simply fails to recognize or acknowledge this rapid social and political change and the evolving consensus in favor of the legalization of marijuana. The Guideline enhancement at §2K2.1(a)(4)(B) makes no distinction between unlawful users of marijuana and unlawful users of other substances such as methamphetamine and heroin which pose a significantly greater danger when closely linked with firearm possession. As such, the enhancement at §2K2.1(a)(4)(B) as applied to a user of marijuana fails to acknowledge the widespread social and political consensus that the use of marijuana does not have the same effect as other controlled substances on a person's judgment, willingness to follow the law, or pro-social behavior. Lengthening Mr. Olson's sentence in this matter by an additional 11-14 months would fail to account for the current social, legal, and political consensus that marijuana should be fully legalized and that individuals using marijuana should not be punished to the same degree as users of other controlled substances.[2]

---

[2] Mr. Olson also contends that the evolving social, legal, and political consensus regarding whether marijuana should be a controlled substance as defined in section 102 of the Controlled Substances Act (21 U.S.C. §802)(See, §18 USC §922(g)(3)), is a factor that supports departure under U.S.S.G. §5K2.0(a)(1)(A), as a mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission, and under §5K2.0(a)(2)(B), as an unidentified circumstance that the Commission has not identified in the Guidelines but that nevertheless is relevant to determining the appropriate sentence

Trafficking in Firearms - §2K2.1(b)(5) - Mr. Olson objects to the four-level enhancement for engaging in the trafficking of firearms pursuant to USSG §2K2.1(b)(5). This enhancement initially requires that Mr. Olson "transported, transferred, or otherwise disposed of two or more firearms to another individual, or received two or more firearms with the intent to transport, transfer, or otherwise dispose of firearms to another individual." Commentary to §2K2.1, Note 13(A)(i). Mr. Olson clearly transferred two or more firearms to the CS on April 26, 2022. However, the facts in the PSR do not establish that he ever "received two or more firearms with the intent to transport, transfer, or otherwise dispose of firearms to another individual" other than the CS. Thus, Mr. Olson would contend that the enhancement under §2K2.1(b)(5) could only apply if the transfer of firearms to the CS on April 26, 2022, fulfilled the additional requirement that Mr. Olson "knew or had reason to believe that that [his] conduct would result in the transport, transfer, or disposal of a firearm to an individual (I) whose possession or receipt of the firearm would be unlawful; or (II) who intended to use or dispose of the firearm unlawfully." Commentary to §2K2.1, Note 13(A)(ii).

The Commentary to USSG §2K2.1(b)(5) makes clear that unlawful possession or receipt of a firearm is limited to transfer of a firearm to a person with a prior conviction for "a crime of violence, a controlled substance offense, or a misdemeanor crime of domestic violence; or… [who] at the time of the offense was under a criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." The facts set forth in the PSR do not allege that Mr. Olson knew or had reason to

believe that the CS was a prohibited person for purposes of §2K2.1(b)(5). The messages exchanged between the CS and Mr. Olson do not indicate that Mr. Olson had knowledge that the CS was a prohibited person under 18 USC §922 by virtue of the CS having "a prior conviction for a crime of violence, a controlled substance offense, or a misdemeanor crime of violence [or] at the time of the offense was under a criminal justice sentence." With respect to the second prong of the "trafficking" definition at Note 13(A)(ii)(II), the enhancement may not be applied merely because the possession by the CS of a "machine gun" would be unlawful. The Commentary is clear that "unlawful" possession is limited to persons with certain convictions and the second prong at Note 13(A)(ii)(II) requires that the transferee of the firearms "intended to <u>use</u> or <u>dispose</u> of the firearm unlawfully," not merely "possess" it unlawfully (emphasis added). There are no facts in the PSR which establish that Mr. Olson "knew or had reason to believe" that the CS would use or dispose of the firearms unlawfully.

With respect to other transfers of firearms which may have occurred in the past and constitute relevant conduct for this offense, the uncontested facts in the PSR do not establish that Mr. Olson knew or had reason to believe that any person to whom Mr. Olson transferred or intended to transfer two or more firearms was a prohibited person. Even if the text conversations set forth in Paragraph 17 of the PSR establish that Mr. Olson intended to transfer two or more firearms to the person involved in that text exchange, other than the CS on April 26, 2022, the text exchange does not establish that Mr. Olson knew or had reason to know that person was a prohibited person for purposes of §2K2.1(b)(5).

The messages may indicate that the individual had been arrested ("hit") in Wisconsin but did not specify the nature of the arrest or that a conviction had resulted, much less a conviction specified in Note 13. The messages actually indicate that the individual sending them had been able to purchase firearms at gun shows despite "background checks" being conducted and "paperwork" required. This fact alone would support an infererence that the individual did not have a conviction which made his possession of firearms illegal. The fact that the individual sending the messages claimed he was not supposed to "even be around a damn pocketknife" may only be consistent with a restriction such as pre-trial conditions of release (relating to the arrest in Wisconsin for which the individual required "lawyer money") and not that the individual was prohibited from possessing firearms due to a conviction set forth in Note 13 of the Commentary to §2K2.1. Moreover, the PSR does not establish that it is more probable than not that Mr. Olson actually sold or intended to sell two or more firearms to this individual.

## **OBJECTIONS TO FACTUAL ASSERTIONS IN PSR**

Although it does not affect the calculation of the Guideline sentencing range, Mr. Olson objects to any factual assertion in the PSR (Paragraphs 14, 101 and 103) that he had manufactured and sold 170-200 ghost guns in the eight to nine months prior to his arrest on April 26, 2022. Law enforcement conducted a forensic examination of cellphones and electronic devices seized from Mr. Olson which did not contain e-mails, photos, text messages, or other evidence to corroborate these oral statements of Mr. Olson. Mr. Olson's living conditions in the basement of his grandmother's home, lack of assets, and lack of

cash or valuables at his residence in Sauk Rapids would be inconsistent with Mr. Olson having obtained almost $200,000.00 in proceeds from the sale of 170-200 ghost guns in the eight to nine months prior to his arrest. The search of Mr. Olson's residence, at which a single drill press and limited evidence of firearm manufacturing was discovered, is not consistent with Mr. Olson having a capability to manufacture 170-200 ghost guns prior to his arrest.

In light of Mr. Olson's youthful age, diminutive physical appearance, and relative lack of success in life, school and employment, these statements appear to be puffery and braggadocio, by which Mr. Olson sought to give the impression to the CS who purchased firearms from him in April of 2022 that Mr. Olson was an important person with experience with firearms and friends involved in criminal activity. Such a conclusion is reinforced by other statements made by Mr. Olson to the CS which are also clearly inconsistent with the facts of record. For instance, Mr. Olson was recorded telling the CS that he when he was arrested for a separate offense in August of 2021[3], he had lost about $50,000, thirty firearms, twenty pounds of weed and six pounds of THC wax. None of these items were seized from Mr. Olson by law enforcement when he was arrested on May 29, 2021, nor during a separate traffic stop on April 16, 2022 (PSR ¶49) when Mr. Olson had only 1.5 grams of THC wax in his possession. Mr. Olson's own insecurity and desire to appear

---

[3] Mr. Olson was actually arrested for this offense on May 29, 2021, the day that it occurred. (PSR ¶48).

larger and more important than he was led him to exaggerate and claim credit for criminal activity which never occurred.

## **ANALYSIS – SECTION 3553(a) FACTORS**

Pursuant to statute, the sentencing court is required to consider all the factors listed under 18 U.S.C. §3553(a) in determining an appropriate sentence. The primary directive in § 3553(a) is for sentencing courts to impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in 18 USC §3553(a) (2). As recognized by the United States Supreme Court in overturning the United States Court of Appeals for the Eighth Circuit, "[a] court is unencumbered in its ability "to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." Gall v. U.S., 552 U.S. 38, 53 (2007).[4]

As recognized in Kimbrough v. United States, 128 S.Ct. 558 (2007), a sentencing judge need not always accept the policy judgments implicit in the Guidelines. While each sentencing is an individualized process, a district court's policy disagreement with the Guidelines may justify categorical variances, not just variances based on individualized determinations. Spears v. United States, 555 U.S. 261, 267 (2009)(per curiam). "Several [courts of appeal] have expressly held that Spears and Kimbrough mean that district courts have broad authority to premise a variance on disagreement with the policy of any

---

[4] In Gall, the trial judge imposed a sentence of thirty-six months of probation when the Guidelines called for a thirty month prison sentence based on the Defendant's participation in a conspiracy to sell MDMA.

10

guideline." United States v. Trejo, 624 F.App'x 709, 713 (11th Cir. 2015)(collecting cases); United States v. Zimmer, 688 F.3d 426, 431 (8th Cir. 2012)(Bright, J., concurring). The Court must also examine other factors to create a sentence that reflects the seriousness of the offense, promote respect for the law, and to provide a just punishment. While the Guideline range may serve as a starting point and initial benchmark, the sentencing court may not presume that the guideline range is reasonable and must make an individualized assessment as to the appropriate sentence based on all the relevant facts presented. Gall v. United States, 128 S.Ct. 586 (2007). The Court's focus, therefore, is not whether to impose a Guidelines sentence or to vary from the Guidelines, but instead should be a focus on the "overarching provision instructing district courts to 'impose a sentence sufficient, but not greater than necessary,' to achieve the goals of sentencing." Kimbrough, 128 S. Ct. at 570.

## HISTORY AND CHARACTERISTICS OF JAY OLSON

Mr. Olson contends that his personal history and characteristics mitigate his culpability for this offense and support a variance from the Guideline sentencing range as determined by the PSR. The Guidelines do not account for Mr. Olson's age, immaturity or history of substance abuse, which contributed to his commission of this offense. The Guidelines do not account for Mr. Olson's need to seek validation from others by appearing to be a "player" in criminal activity to seek compensation for his relative lack of success in life and history of being belittled and bullied as an adolescent in school. Most importantly, the Guidelines do not account for Mr. Olson's genuine remorse, insight into his behavior, and the family support which provides him – at a young age – with the

11

opportunity to take a different path in the future. As a young man confronted with this first significant criminal sentence in his life, three years of actual incarceration coupled with an additional three years of supervised release is a "sufficient" sentence to both deter Mr. Olson from future criminal conduct and to constitute "just punishment" for his first significant criminal conviction. Mr. Olson's completion of available programming during his past twelve months of detention in the Sherburne County Jail, coupled with the support of his family, demonstrate a significant potential for him to turn his life around and avoid further criminal conduct. As recognized even by the Department of Justice, "prisons are good for punishing criminals and keeping them off the street, but prison sentences (particularly long sentences) are unlikely to deter future crime. Prisons may actually have the opposite effect: Inmates learns more effective crime strategies from each other, and time spent in prison may desensitize many to the threat of future imprisonment." National Institute of Justice, U.S. Department of Justice, Office of Justice Programs, May 2016, https://www.ojp.gov/pdffiles1/nij/247350.pdf. Mr. Olson does not need to learn more effective crime strategies. He does not need to be desensitized to the threat of future imprisonment. He needs appropriate punishment for his crime coupled with an opportunity to succeed and structures to reinforce better decision-making, such as that which is available during a term of supervised release and re-entry programs in the District of Minnesota, to guide him in following a different path in the future upon his release from prison.

## JUST PUNISHMENT AND RESPECT FOR THE LAW

The nature and quantity of the firearms manufactured and sold by Mr. Olson undoubtedly qualify this matter as a serious offense. However, a need for just punishment and to promote respect for the law, does not automatically mean that this Court should impose the maximum sentence of sixty months allowed by law. The United States has the highest incarceration rate in the world – over 2.1 million people in prison, representing 639 prisoners per 100,000 population.[5] Virtually by default, the criminal justice system views a significant prison sentence as the only means of demonstrating the seriousness of an offense, promoting respect for the law, and ensuring deterrence of future crime. Justice and respect for the law can also be promoted, however, by imposition of a significant sanction – and a sentence of thirty-six months is certainly a significant sentence – coupled with providing a youthful offender the opportunity to earn redemption. A sentence of thirty-six months with an additional sentence of three years of supervised release means that Mr. Olson will have spent most of his adult life under criminal justice supervision. Such a sentence would be sufficient but not greater than necessary to achieve the purposes of sentencing.

## PROTECTION OF THE PUBLIC

Despite their tremendous potential to harm public safety, firearm distribution offenses occupy a strange niche in the federal criminal code. The possession of

---

[5]  https://www.statista.com/statistics/262962/countries-with-the-most-prisoners-per-100-000-inhabitants/

unregistered, unserialized firearms is not a crime. Mr. Olson purchased the parts for the weapons he manufactured without a permit, without having to provide identification, and without a background check being performed. Even the manufacture and regular sale of such firearms, if done as a "hobby" and not "for profit," was not a crime under federal law in April of 2022.

The United States is awash in firearms and gun violence. This Court should not impose a sentence for the purpose of holding Mr. Olson personally accountable for the uncontrolled gun violence in the United States which largely results from societal acceptance of firearms, the manufacture and marketing of firearms by corporations for profit, and the inability and/or unwillingness of governmental authorities to regulate the flooding of our streets, communities, and neighboring countries, with dangerous weapons in a manner virtually without precedence in the rest of the world. If the Court focuses instead on the need "to protect the public from further crimes" of this young defendant, a sentence at the statutory maximum of sixty months is not required.

## TYPES OF SENTENCES AVAILABLE

The type of sentence available for this Court to impose on Mr. Olson is a sentence of imprisonment in the custody of the Bureau of Prisons (BOP). In determining the appropriate length of that sentence, Mr. Olson asks the Court to consider that by the date of sentencing, he will have served almost one year in the Sherburne County Jail. This time is significantly harsher than time in BOP custody, in terms of lack of access to programming, substance abuse treatment, recreation, and employment. In addition, this

Court should consider that Mr. Olson would be particularly vulnerable in prison. In the past, he has been subject to persistent verbal and physical bullying (PSR, ¶55). He is only 22 years of age and is of slight physical build. He has no prior experience serving a custodial sentence in prison. He is likely to be incarcerated with older individuals who have engaged in significant criminal activity and he will be at significant risk of harm and abuse in prison. These factors support a shorter rather than a longer custodial sentence.

## **CONCLUSION**

For the reasons stated above and to be set forth at sentencing in this matter, Jay James Olson requests that this Court impose a sentence of thirty-six months as sufficient, but not greater than necessary, to accomplish the purposes of sentencing set forth at 18 USC §3553(a).

Dated: March 7, 2023

      S/BRUCE D. NESTOR
Bruce D. Nestor, 0318024 – MN
DE LEÓN & NESTOR, LLC
3547 Cedar Avenue South
Minneapolis, MN  55407
(612) 659-9019
(612) 436-3664 – Facsimile
nestor@denestlaw.com